[Crim. No. 5851.   Second Dist., Div. Two.   May 20, 1957.]

THE PEOPLE, Respondent, v. TANDY LEE QUISEN-
BERRY, Appellant.

J. M. Lopes for Appellant.

Edmund G. Brown, Attorney General, William E. James, Deputy Attorney General, Roy A. Gustafson, District Attorney (Ventura) and Elwood R. Walls, Deputy District Attorney, for Respondent.

MOORE, P. J.—Having been convicted on two counts of violating section 503 of the Vehicle Code, defendant, a youth of 18 years, was referred to the California Youth Authority for acceptance or rejection. He appealed from such judgment and from the order denying him a new trial, and now demands a reversal on the grounds that the evidence was not sufficient; the trial court erred in its rulings and in giving instructions and the district attorney was guilty of prejudicial misconduct.

### Facts Are Sufficient

While contention is made that the corpus delicti was not established, a discussion of that claim will be deferred until evidence of appellant's guilt has been explored.

 On August 4, 1956, appellant and his friend, Celorie, were in detention at juvenile hall in the county of Ventura. After Mr. Hodgson, the group supervisor, had confined the other boys to their rooms about 9 p.m., appellant and Celorie

demanded of Hodgson that they be released from custody. Following the rejection of their demand, they returned with makeshift weapons which they flourished in the face of the supervisor and impudently announced that they were going out of the hall and they demanded keys and menaced their keeper with a sharpened steel instrument. Thereupon he let them out at the back door. They climbed over a fence, proceeded some distance, stayed until 12:30 a.m. when they walked to Montalvo. There they saw a light green sedan, open and unlocked with keys in the ignition. About 3 a.m. they took the sedan without the consent of its owner, Mr. James B. Kearney, Jr. From the proof of such fact the jury reasonably inferred that appellant either took the sedan without the consent of its owner or assisted Celorie in doing so. The two boys had plotted their escape from the juvenile hall together and had on the afternoon of the fourth tried to break the screen loose in the boys' restroom. Also, it was a fair inference of the jury to conclude that their concerted action carried them from the escape from the hall to the point at Montalvo where they took possession of the green sedan. Their mutual efforts betrayed to the jury their motive for appropriating the car. Moreover, the boys knew that their reprehensible behavior in escaping from the hall would surely bring down upon them the wrathful efforts of all police agencies to effect their recapture and that their solitude would not be as conspicuous in a sedan on a highway as they would be afoot on a deserted road. Withal, a car could carry them quickly from their would-be captors. Their confinement in the hall, their escape by use of unlawful method, their eagerness to avoid arrest and to rest in friendly precincts—all concurred in giving appellant and his friend an intent to deprive the owner of the sedan of its possession and its title. So compelling were the facts established by the evidence received that the inference of the jury that the taking of the sedan was with felonious intent was unavoidable. (Veh. Code, § 503; *People* v. *Gibson,* 63 Cal.App.2d 632, 635 [146 P.2d 971] ; *People* v. *Zervas,* 61 Cal.App.2d 381, 384 [142 P.2d 946].) ▮ The question of felonious intent is generally for the trier of fact and may be inferred from all the circumstances. (*Ibid.*; *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778] ; *People* v. *Perkins,* 8 Cal.2d 502, 510 [66 P.2d 631].) ▮ Indeed, what should a jury conclude from facts showing that the escapees from a juvenile home attempting to avoid arrest at 3 o'clock in the morning, on a deserted street, find a sedan with keys in the ignition?

They were zealous to avoid detection and knew that a sound motor car could remove them from possible arrest. To take a strange car and remove its identifying numbers and drive on was the natural thing for such fugitives to do. The finding that they intended to cheat the owner of his automobile is the logical result of sound reasoning. If further proof of their intention should be required, it is found in the fact that after substituting for the sedan's license plates those taken from another car, they visited Thousand Oaks and Oxnard where they were recognized by Mr. Flitt, Assistant Probation Officer, who demanded that they surrender. Both boys thereupon ran, leaving the sedan where they had parked it and concealed themselves, first in a shed on South E Street in Oxnard and later in a residence until 9:30 p.m. August 5, when they hid in a schoolyard until 12:30 a.m. August 6.

Then they found another automobile in a driveway on Palm Drive. (Count II.) It was the two-door car of Abe Hartveld, who testified that he did not give appellant permission to drive it. Its doors were unlocked and its keys in place. Without the consent of the owner, the wayward boys took the car and headed southward. Did not appellant participate in the flight with the two-door as his conveyor? Did he not have an additional motive to speed away? An officer had just demanded his surrender. The sleuths were on the search for the nocturnal adventurers who drove on into the night. Having reached Azusa, about 35 miles east from Los Angeles, they removed Hartveld's license plates from the automobile.

Their felonious intent to steal the two-door was clearly inferable from the recited facts and by succeeding events. While they drove about Azusa discussing methods of obtaining money for their flight to Mexico, they contacted Raymond Carballo in San Bernardino whom Celorie told they were being sought by the police for car theft. After Carballo had asked appellant about six times whether he owned the two-door car, the latter answered that he and his father owned it. From such deceitful statement the jury justifiably inferred that it demonstrated appellant's consciousness of guilt. (*People* v. *Walker*, 99 Cal.App.2d 238, 243 [221 P.2d 287]; *People* v. *Gibson*, 64 Cal.App.2d 537, 539 [149 P.2d 25].) After Carballo refused to aid the boys in evading the officers, they decided to journey to Paso Robles. They arrived in Oxnard in the evening of August 6 and went to Carballo's home. Soon the police arrived. The boys escaped and hid in an empty garage where they were soon captured. At the police station appellant stated that keys to the sedan were in the pocket

of trousers he had left in the two-door car. This was practically an admission he had recently been in possession of the sedan. While possession alone of a stolen automobile is not sufficient to support a conviction under section 503, yet where the circumstances such as above recited indicate the connection of the accused with the theft of the car and he does not show that he had honestly obtained its possession but admits that he had recently had it in his custody, what facts further are required to prove his guilt? In *People* v. *Wissenfeld,* 36 Cal.2d 758 [227 P.2d 833], it was held that despite the defendant's denial to the police that he stole the car in question, proof of the following was sufficient to establish his guilt: (1) his driving the machine when arrested; (2) his false statements when questioned as to its ownership and his claim that if he was driving he must have been asleep; (3) his presence with a codefendant who claimed to have stolen the automobile and to have used it with Wissenfeld in the bookmaking business; (4) his need for a car in making his gambling collections; (5) his possession and failure to make any explanation in court of the suspicious circumstances. (*People* v. *Wissenfeld,* 36 Cal.2d 758, 763 [227 P.2d 833].) The facts established in the case at bar are equally convincing and appellant did not testify. In addition to appellant's possession of the sedan and his travel in it for over 300 miles, only slight corroborative evidence of other inculpatory circumstances will suffice. (*People* v. *Citrino,* 46 Cal.2d 284, 288 [294 P.2d 32]; *People* v. *Holland,* 82 Cal.App.2d 310, 312 [186 P.2d 58]; *People* v. *King,* 122 Cal.App. 50, 53 [10 P.2d 89]; *People* v. *Swanson,* 120 Cal.App. 173, 176 [7 P.2d 380].)

But such argument and authorities are unnecessary. On August 7 appellant freely and fully admitted to Probation Officer Mitchell that on August 4th he and Celorie discussed in juvenile hall their plan to escape; stated that he had a screwdriver and would try to break a screen; that he took an iron puck from the shuffleboard and tried to break out; that after they made their escape, they walked to Montalvo, took the sedan, drove to Camarillo, then to Thousand Oaks, then to Oxnard, met Mr. Flitt, hid in the schoolyard, found the two-door car and took it, drove to Azusa, switched the license plates from another car to the one they drove, then proceeded to Calexico. There they turned north, decided to go to Paso Robles, but stopped at Oxnard where the police took them into custody.

162

## CORPUS DELICTI WAS ESTABLISHED

In determining the guilt of the accused, the jury properly considered the fact that appellant did not testify at the trial. (Const., art. I, § 13; *People* v. *Renteria*, 60 Cal.App.2d 463, 472 [141 P.2d 37].)

In assembling the evidence of appellant's guilt, the "essential elements" of the crime or corpus delicti of auto theft under Count I have been included. Even after excluding the extrajudicial statements of appellant (*People* v. *Cobb*, 45 Cal. 2d 158, 161 [287 P.2d 752]), proofs of the corpus delicti have been generously cited in reporting the movements of appellant from the moment he first seized the sedan at Montalvo until the car was abandoned at Thousand Oaks. (*People* v. *Wiezel*, 39 Cal.App.2d 657, 664 [104 P.2d 70].) Only prima facie proof of the corpus delicti is required. (*People* v. *McMonigle*, 29 Cal.2d 730, 738 [177 P.2d 745].) In proof of Count I, the evidence shows that he took the automobile of another without the latter's consent to deprive the owner of his title to or possession thereof. (Vehicle Code, § 503; *People* v. *Neal*, 40 Cal.App.2d 115, 117 [104 P.2d 555].) From the fact that the vehicle was driven without its owner's consent, it is a reasonable inference that the taker intended to deprive the owner of possession. (*People* v. *Orona*, 72 Cal. App.2d 478, 484 [164 P.2d 769].) That inference was supported by the fact that when recovered it had strange license plates upon it. (*People* v. *Holland*, 82 Cal.App.2d 310, 312 [186 P.2d 58].) Such plates were intended to conceal the car from the officers and from its owner by making identification difficult. (*Ibid.*)

Under Count II it was established that the two-door vehicle was taken without the permission of its owner. It was recovered two days later at some distance from where it had been taken, bearing strange license plates. With complete proofs of the essential elements of the crimes of auto theft (Vehicle Code, § 503), no further proof was required except appellant's connection with the crimes which has been shown above.

## RULINGS ON EVIDENCE

Appellant assigns as prejudicial error the court's allowing, over his objection, evidence of his escape from Juvenile Hall. Appellant bases his objection upon the ground that proof of evidence of a separate crime (escape from Juvenile Hall) is distinctly different from that for which he was on trial. It is the law that, except when the offer is to show merely a criminal disposition, relevant evidence is not to be excluded

because it reveals the commission of an offense other than that charged. ■ If it tends logically and by reasonable inference to establish a fact material to the issue or to overcome material matter sought to be proved by the defense, it is admissible even though it embraces the commission of another crime, notwithstanding the other crime may not be similar in kind or not form part of a single design. (*People* v. *Peete,* 28 Cal.2d 306, 314 [169 P.2d 924] ; *People* v. *Citrino, supra,* 46 Cal.2d 284, 288; *People* v. *Riser,* 47 Cal.2d 566, 578 [305 P.2d 18].) In *People* v. *Neal, supra,* 40 Cal.App.2d 115, it was contended that the admission of evidence tending to prove that after the defendant took the automobile without the owner's consent, he drove it to a remote area and stripped it of equipment, was erroneous. It was held that the overruling of the objection was not error; that under section 503 the law required proof that the defendant took the car with a specific intent to deprive the owner of his title to or possession of such vehicle and that such intent must be proved as a fact; that the mere taking and abandonment of the car did not necessarily establish that fact; that the removal of the car's equipment and dividing it with his companion tended to prove the intent of the defendant at the time of the taking. Thus it was relevant and was properly admissible even though it proved some other offense. Similar reason prevailed in *People* v. *Renteria, supra,* 60 Cal.App.2d 463. Over the protest of the defendant, the appellate court held that although in the prosecution for theft of an automobile the court admitted evidence that the defendant had visited a girl in a state reform school and urged her to run to his car when she was marching to Mass, the court held that such evidence was admissible to prove the felonious motive of the defendant for stealing the car. The court followed the rule that the evidence of other offenses committed before the act charged is admissible if it tends to disclose that the defendant had a motive for the offense charged. (See *People* v. *Lisenba,* 14 Cal.2d 403, 428 [94 P.2d 569] ; *People* v. *Slater,* 199 Cal. 357, 359 [249 P. 177] ; *People* v. *O'Brand,* 92 Cal.App.2d 752, 754 [207 P.2d 1083].)

■ In the instant action, proof of appellant's escape logically tends by reasonable inferences to establish both motive and specific intent as to both counts. It was a natural inference that on August 4 defendant after having escaped from juvenile hall and while still fearing recapture should anxiously seek means whereby to be transported to a remote

scene. It was night. He and his companion had escaped at 9:30 p. m., remained on a hilltop until 12:30 a. m., started walking toward Montalvo. When fearing apprehension they took the green sedan and changed its license plate. Also, after having abandoned that vehicle at Oxnard they sought other means of transportation. It required no strain of the reasoning processes to infer that they together took the two-door car and drove southward, intending to deprive the owner of its title. What else would a jury think as to why the boys took that automobile after the preceding experiences of the wanderers? They feared to be caught; they had no money with which to buy transportation; they hoped to find security in Mexico; they found the car open, keys in the ignition. The penalty for taking the vehicle from its owner was not a sufficient restraint upon these night prowlers in search of safety.

### Instructions

Complaint is made of the instruction with reference to evidence of the escape. It was a fair and favorable instruction. Appellant had objected to the evidence concerning his escape from juvenile hall on the ground that it was a totally different offense. ■ Appellant is presumed to have been held lawfully by the prison in which he was confined. (Code Civ. Proc., § 1963, subds. 1, 15, 33; *People* v. *Citrino, supra,* 46 Cal.2d 284, 287.) The presumption was sufficient, but also the ''group supervisor'' testified that appellant was at the time in his care. He was not cross-examined and appellant did not testify. In such event, the inference is obvious that appellant knew his confinement was lawful. The instruction merely explained that the evidence concerning the escape was received for a limited purpose only and ''not to prove distinct offenses or continued criminality.''

### Misconduct of District Attorney

■ There was no error in the district attorney's relating the facts in his opening statement about the escape of appellant from juvenile hall. It was admissible evidence and served well to show the eagerness and zeal of appellant in seeking a rapid transportation (*People* v. *Silva,* 41 Cal.2d 778, 783 [264 P.2d 27]; *People* v. *Sturman,* 56 Cal.App.2d 173, 182 [132 P.2d 504]) from the vicinity of his escape.

Judgment affirmed.

Ashburn, J., and Richards, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.